IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE

Civil Case No. 04-cv-01418-LTB-PAC

DANIEL JACKSON,

    Plaintiff,

v.

DOUGLAS STEINHOUR, an individual and as a City of Greeley Police Officer; and
FRED BUDD, an individual and as a City of Greeley Police Officer;

    Defendants.
_____

ORDER
_____

This matter is before me on Defendant Douglas Steinhour's and Defendant Fred Budd's Motion for Summary Judgment, filed on July 11, 2005, seeking judgment against Plaintiff, Daniel Jackson, and dismissal of this case. After consideration of the motion and all related attachments, I DENY Defendants' motion.

**I. Facts**

On October 17, 2003, Plaintiff was admitted to the Island Grove Treatment Center, a detox facility in Greeley, Colorado, due to a high level of intoxication. Defendants, who are police officers for the City of Greeley, responded to a call at approximately 2:20 a.m. from the treatment center staff for assistance with Plaintiff who was being uncooperative.

It is uncontested that Plaintiff was alone in the cafeteria when the Defendant Officers arrived. The Officers testified that they approached Plaintiff and discussed with him the necessity of placing him in isolation at the treatment center or, alternatively, taking him into the police

station. As a result of his uncooperativeness, the Officers eventually ordered Plaintiff to turn around to be placed in handcuffs. Plaintiff refused and, according to the Officers' testimony, was increasingly aggressive towards them. When Plaintiff raised his fist in an apparent attempt to punch Officer Steinhour, the Officers each grabbed his shoulder and took him to the ground in an "arm-bar" takedown. The Officers testified that they each grabbed one of his arms and lifted him up over their legs and hips, and then took him to the ground chest first. As he went down, Plaintiff's forehead struck the metal base of a table resulting in a laceration. While on the ground, Plaintiff held his hand beneath him in an attempt to avoid being handcuffed. In order to get Plaintiff to free his arm, the Officers testified that they each employed two knee strikes to Plaintiff's upper- thigh, lower-hip area. Plaintiff was then handcuffed without further incident.

Plaintiff, in contrast, testified that although he was previously upset and had been yelling and kicking objects, by the time the Officers arrived he was calm and no longer combative. He testified that when the Officers approached him, they asked him what his problem was and, after he responded, they then indicated that they didn't care. After Plaintiff said "I guess I am not going to get anywhere with you assholes," the Officers "blindsided" him and "jumped him" when he turned to pick up his coffee. The next thing he knew, his glasses were knocked off as he was thrown to the floor. While on the floor, the Officers repeatedly kicked and beat him. He testified that he did not know about the number of time they kicked and hit him, but it was a "lot." He testified that he could not see what they were hitting him with, but that it sounded and felt like a baton.

After the Officers handcuffed him, Plaintiff indicated that he could not stand because his leg was broken. An ambulance was called, and Plaintiff was taken on a stretcher to the

emergency room.  X-rays revealed a severe compound fracture to Plaintiff's left leg at the knee; specifically a "Schatzker V tibial plateau fracture."  Ten days later, after the swelling subsided, Plaintiff underwent surgery to repair his fractured leg.  As a result of this incident, Plaintiff was arrested, charged and ultimately convicted by a jury for failure to obey a lawful order.

## II. Plaintiff's Claims

In his complaint for damages, Plaintiff alleges a violation of 42 U.S.C. § 1983 by the Defendant Officers for excessive and unreasonable use of force in violation of the Fourteenth Amendment (First Claim for Relief).  He also asserts various state law claims for:  Negligence (Second Claim for Relief); Intentional Infliction of Emotional Distress (Third Claim for Relief); and a claim for Exemplary Damages pursuant to C.R.S. § 13-21-102  (Fourth Claim for Relief).

## III.  42 U.S.C. § 1983 Claim

Defendants first assert that they are entitled to summary judgment on Plaintiff's 42 U.S.C. § 1983 excessive force claim.  Fed. R. Civ. P. 56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.   The non-moving party has the burden of showing that there are genuine issues of material fact to be determined.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial.  *Id.* at 323;  *Mares v. ConAgra Poultry Co.,*

*Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P. 56(e).

In support of their argument that they are entitled to summary judgment on Plaintiff's excessive force claim, Defendants assert that Plaintiff cannot prove that the force used during the incident at issue here cause Plaintiff's injuries; specifically his fractured leg. They assert that Plaintiff's version of the events is not adequately supported by evidence, and that he is using conclusory allegations to support his assumption that the Officers' caused his injuries. They point to the fact that Plaintiff cannot remember how he was taken to the ground or how many times and with what he was hit. They note that the medical records indicate that four weeks prior to the incident here he sought medical treatment for pain to his left knee, and that three days prior to the incident he sustained a fall. They also assert that his medical expert testified that Plaintiff could have sustained the fracture prior to the altercation with the Officers. As a result, they argue that Plaintiff cannot "merely hypothesize" that this incident caused his injuries.

Although the medical evidence is not definitive, particularly as it relates to causation of Plaintiff's injuries, it is undisputed that Plaintiff was standing just prior to the incident and was subsequently diagnosed with a significant fracture to his left knee immediately thereafter. Plaintiff's expert testified that it is "highly unlikely" that a person with a "Schatzker V tibial plateau fracture" could be ambulatory for any length of time. This evidence, in and of itself, is sufficient for Plaintiff to withstand summary judgment on the issue of causation. The causation evidence relied on by Defendant goes to its weight. I disagree with Defendants' contention that

there are no material facts in dispute and that no reasonable jury could return a verdict in Plaintiff's favor because "no fact substantiate Plaintiff 's claims."  Not only is the evidence hotly contested, but I am required to view it in the light most favorable to Plaintiff.   However, although I have determined that Defendants are not entitled to summary judgment, I  reject Plaintiff's request to impose sanction against Defendants under Fed. R. Civ. P. 11.  I do not agree with Plaintiff  that Defendants' argument is "so contrary to the obvious facts" that the imposition of sanctions is warranted.

Alternatively, Defendants contend that they are entitled to summary judgment on Plaintiff's excessive force claim on the basis of qualified immunity.  Qualified immunity is a judicially created affirmative defense which protects state officials sued in their individual capacity for civil damages under 42 U.S.C. § 1983.  *See DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001).  When government officials are performing discretionary functions, they will not be held liable for their conduct unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988)(*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).  Whether a defendant is entitled to a qualified immunity defense is a question of law that should be resolved at the earliest possible stage in litigation.  *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

Once a defendant pleads qualified immunity, the plaintiff bears a heavy two-part burden to

show that qualified immunity does not exist. *Albright v. Rodriguez*, 51 F.3d 1531, 1534 -1535 (10th Cir. 1995). The initial inquiry is whether the defendant's conduct violated a constitutional right. At the summary judgment stage, the court considers whether the evidence, viewed in the light most favorable to the party asserting the injury, shows that the alleged wrong-doer violated a constitutional right. *See Saucier v. Katz, supra*, 533 U.S. at 201. If, under this standard, no constitutional violation occurred, then the officials have qualified immunity from suit and should be dismissed from the action. *Id.* If a constitutional violation can be said to have occurred, then the qualified immunity inquiry proceeds to the second step, which is to determine whether the right that was violated was "clearly established" at the time of the violation. *Id*. at 195-96; *Schnurr v. Board of County Com'rs of Jefferson County*, 189 F.Supp.2d 1105, 1120 (D.Colo. 2001).

Defendants' principal contention is that Plaintiff cannot succeed in carrying the first prong of his burden to defeat the qualified immunity defense in that he cannot show that they used excessive and unreasonable force constituting a violation of his constitutional rights. To establish such a constitutional violation, Plaintiff must demonstrate that the level of force used by the individual officers was not objectively reasonable in light of the facts and circumstances confronting them. *Saucier v. Katz, supra,* 533 U.S. at 205; *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Evaluating the reasonableness of the force used by the officers "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396. The totality of the specific facts and circumstances of the case must be considered, including such relevant factors as the severity of the crime at issue, whether the

suspect posed an immediate threat to the safety of the officers or others, and whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight. *Saucier v. Katz, supra,* 533 U.S. at 205.

Here, it is Plaintiff's testimony that he was calm and not combative by the time the Officers arrived. He also testified that the Officers did not give him the options of either cooperating or submitting to peaceful arrest before taking him to the ground and repeatedly kicking and hitting him with what he thinks was a baton. Plaintiff testified that he is unaware of the exact mechanism of his leg fracture, but indicates that occurred at some point during the alleged unprovoked beating.

Defendants argue that there is no evidence supporting Defendant's verison of events and his allegations regarding the amount of force used by the Officers. They claim that there is no medical evidence of bruising that would be consistent with Plaintiff's claim of repeated kicking and beating. They also assert that Plaintiff cannot prove when his leg fracture occurred or if the physical altercation caused the fracture. Even if the altercation caused the injuries, Defendants maintain that Plaintiff cannot prove that the force used by the Officers, in the form of a standard arm-bar take-down, was unnecessary or unreasonable under the circumstances. They argue that the staff at the treatment center reported that Plaintiff was intoxicated and volatile, he was uncooperative with them, and he raised his fist in an aggressive manner. Because he represented an immediate threat to them and to others, Defendants contend that the force they used to subdue Plaintiff was objectively reasonable under the circumstances. Additionally, they assert that Plaintiff's pre-existing medical condition made his bones weak and susceptible to breaking with less force that health bones and, as such, there is evidence that his injuries could have been caused

by an assault consistent with Plaintiff's version of the incident. Defendants, in essence, ask that I discount Plaintiff's testimony because his version of events is unbelievable, and assert that their testimony to the contrary is controlling.

Plaintiff's case of excessive or unreasonable force is solely supported by his version of the events, which lacks specificity and is admittedly compromised by his level of intoxication and the fact that his glasses were knocked off during the incident. However, because I am constrained to view the evidence in the light most favorable to Plaintiff, I conclude that Plaintiff's evidence is sufficient for a jury to conclude that the Officers' conduct here was not objectively reasonable under the circumstances and thus violated Plaintiff's Fourth Amendment right against excessive force. Because a constitutional violation can be said to have occurred, Plaintiff has met his burden under the first prong to defeat the qualified immunity defense.

In light of my ruling, I do not reach Plaintiff's contention that certain exhibits attached to Defendants' motion for summary judgment are not properly before me in that they were allegedly not properly authenticated pursuant to the requirements in Fed. R. Civ. P. 56(e). I further note that Defendants contend that the "supplemental" affidavits attached to Plaintiff's response brief are inappropriate for several different reasons. Without addressing the validity of this argument, I nonetheless have ruled on this matter without considering the evidence contained in the affidavits at issue.

Because it can be said that a constitutional violation occurred, I next determine whether the right violated was "clearly established" pursuant to the second prong of the qualified immunity defense. To the extent that Defendants argue that Plaintiff cannot meet his burden regarding the second step, I conclude that the law clearly put the Officers on notice that their conduct as alleged

by Plaintiff would be unlawful.  Defendants' argument that Plaintiff cannot provide legal authority for the proposition that a standard police arm-bar take down can amount to excessive for is misplaced.   Rather, the relevant inquiry is whether the legal standards applicable to Plaintiff's right to be free from excessive force were clearly established.  There is no question but that the legal standards regarding excessive force  was established as the time of the incident here.   *See Gross v. Pirtle*, 245 F.3d 1151, 1158 (10th Cir. 2001)(the reasonableness standard is "clearly established" in the context of § 1983 actions for excessive force); *Hill v. Martinez*, 87 F. Supp 2d. 1115, 1128 (D. Colo. 2000).

 Finally, as discussed above, the Officers have not met their  burden to show that there are no genuine issues of material fact warranting judgment as a matter of law.   As a result, Plaintiff's 42 U.S.C. §1983 claim for excessive force is not precluded by a qualified immunity defense.

### IV. State Law Claims

Finally, Defendants contend that Plaintiff's state law claims for negligence and intentional infliction of emotional distress, as well as his claim for exemplary damages, should be dismissed on the basis that they are immune from suit under the Colorado Governmental Immunity Act, C.R.S. §§ 24-10-101, *et seq*. (the "CGIA").

The CGIA provides immunity for a public employee for any claim for injury which lies in tort or could lie in tort, "unless the act or omission causing injury was willful and wanton." C.R.S. §24-10-118(2)(a).  The majority of Colorado courts apply  the "willful and wanton" definition contained in Colorado's exemplary damages statute, C.R.S. §3-21- 102(1)(b), which

9

provides that willful and wanton conduct is "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to the consequences, or the rights and safety of others, particularly the plaintiff." *See O'Hayre v. Board of Educ. for Jefferson County School Dist. R-1,* 109 F.Supp.2d 1284, 1295 (D. Colo. 2000). Under this definition, I agree with Plaintiff's contention that he has alleged facts that support that Defendants' actions were wilful and wanton, which excepts his tort claims from immunity under the CGIA.

ACCORDINGLY, for the foregoing reasons, I DENY Defendants' Motion for Summary Judgment [# 58].

Dated: September   20  , 2005, in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, CHIEF JUDGE